# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| JOEL BECKFORD, | : |
| Petitioner, | : |
| vs. | :   CA 06-0667-WS-C |
| DEPARTMENT OF HOMELAND SECURITY, et al., | : |
| | : |
| Respondents. | |

## REPORT AND RECOMMENDATION

Joel Beckford, a native and citizen of Jamaica ordered removed from the United States and presently being detained by the United States Department of Homeland Security, has petitioned this Court for habeas relief pursuant to 28 U.S.C. § 2241.[1] This matter has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c). It is recommended that the instant petition be dismissed, without prejudice to being filed at a later date, because Beckford has prematurely filed the present attack upon his post-removal-

---

[1] Petitioner is in the actual and present physical custody of David O. Streiff, Warden of the Perry County Correctional Center in Uniontown, Alabama. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447, 124 S.Ct. 2711, 2724, 159 L.Ed.2d 513 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.").

period detention.

## FINDINGS OF FACT

1.	Beckford is a native and citizen of Jamaica who entered the United States on August 6, 1984 as a lawful permanent resident. (Doc. 12, Exhibit A to Declaration of Dennis E. Rau, Jr.)

2.	The Department of Homeland Security placed Beckford into removal proceedings by the issuance of a Notice to Appear dated August 8, 2005. (*Id.*) Petitioner was notified that his history of drug-related convictions made him deportable. (*See id.*)

3.	On October 6, 2005, Immigration Judge John B. Reid ordered Beckford removed from the United States and returned to his native Jamaica. (Doc. 12, Exhibit B to Rau declar.)

4.	Beckford timely appealed the Immigration Judge's October 6, 2005 decision to the Board of Immigration Appeals. (Doc. 12, Exhibit C to Rau declar.) On March 7, 2006, the Board of Immigration Appeals issued its decision affirming the Immigration Judge's determination and dismissing the appeal. (*Id.*)

> The respondent is a native and citizen of Jamaica who was found removable by the Immigration Judge on the aggravated felony and controlled substance charges. The charges against the respondent stemmed from three criminal

convictions in New York: (1) criminal sale of marijuana in the 4th degree, entered against the respondent on October 9, 1999, (2) criminal possession of marijuana in the 5th degree, entered on February 7, 2000, and (3) criminal sale of marijuana in the 4th degree, entered against the respondent on June 13, 2000. *See* N.Y. Penal §§ 221.10, 221.40 (West 2000). All three crimes were prosecuted as state misdemeanors against the respondent.

The respondent has challenged the findings and order of the Immigration Judge. We note that the respondent indicated in his Notice of Appeal ("NOA") that a separate written brief or statement would be filed, but none has been filed to date. *Cf.* 8 C.F.R. § 1003.1(d)(2)(i)(E) (2006). However, we take from the respondent's NOA that he contends the Immigration Judge erroneously found him removable as an aggravated felon, which would statutorily bar him from cancellation of removal for permanent residents. *See* section 240A(a) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1229b(a). Specifically, the respondent argues that he is not removable as an aggravated felon because he was only convicted of misdemeanor controlled substance offenses, none of which contains a drug trafficking element, and none of which "requires remuneration." We observe at the outset that section 221.40 criminalizes the "sale" of marijuana, while specifically excepting those sales covered under section 221.35 of the New York Penal Code. Section 221.35, however, only punishes those sales of marijuana in a weight of under two grams, and without any consideration for such a sale. Therefore, a person could be convicted under section 221.40 for a sale of marijuana in an amount greater than two grams, without consideration. That would render the respondent's convictions punishable as mere "possession" offenses under the Controlled Substances Act, 21 U.S.C. § 844(a), rather than as explicitly "trafficking" offenses.

Regardless of whether the respondent's multiple convictions were for "sales" or merely possession offenses, we affirm the Immigration Judge's decision finding the respondent removable as charged, but on different grounds. The

Immigration Judge noted that the respondent's multiple misdemeanor drug convictions could result in a conviction for an aggravated felony since 21 U.S.C. § 844(a) provides that a second or subsequent drug possession offense is punishable at a felony level if the second or subsequent offense is committed after a prior drug conviction has become final (I.J. at 8-9). *See also United States v. Simpson*, 319 F.3d 81, 85-86 (2d Cir. 2002).

The problem with the Immigration Judge's reliance on *United States v. Simpson, supra*, is that that case did not repudiate that circuit's bifurcated approach to the interpretation of the term "drug trafficking crime (as defined in section 924(c) of title 18)" in the immigration and criminal law contexts as regards the classification of State drug offenses (at issue here). In the former arena, the Second Circuit has held (see *Aguirre v. INS,* 79 F.3d 315 (2d Cir. 1996)), that it will follow the Board's original "hypothetical felony" approach, announced in *Matter of Davis*, 20 I&N Dec. 536 (BIA 1992), in which a State drug offense is a "drug trafficking crime," and hence an aggravated felony, only if the drug offense would be punishable as a felony under federal law. Notably, the two other circuits that adhere to the Second Circuit's bifurcated approach, the Third and the Ninth, have each held that a second or subsequent drug possession offense is *not* punishable as a federal felony (and thus is not a "drug trafficking crime" aggravated felony), albeit for different reasons. The Second Circuit has not yet opined on this question in the immigration context, but given the results in the two sister circuits that follow its approach, it appears at least possible, if not indeed likely, that the Second Circuit would reach a similar conclusion. On the other hand, for criminal law purposes the Second Circuit follows the approach taken by the majority of circuits (*see,* collecting the cases, *United States v. Palacios-Suarez*, 418 F.3d 692 (6th Cir. 2005), aligning itself with the minority), and the one we have lately indicated we would follow in the absence of contrary controlling precedent, *see Matter of Yanez*, 23 I&N Dec. 390 (BIA 2002) (overruling *Matter of Davis, supra*), in which a State drug offense is deemed

a "drug trafficking crime" and therefore an aggravated felony if it is punished as a felony under *either* State or federal law. See *United States v. Pornes-Garcia*, 171 F.3d 142 (2d Cir. 1999). None of the respondent's convictions was a state felony; all are misdemeanors. Nevertheless, the courts that follow this approach appear uniformly to treat a second or subsequent drug possession offense as a federal felony given the enhanced punishment provisions in 21 U.S.C. § 844(a) alluded to earlier. *See, e.g., United States v. Sanchez-Villalobos*, 412 F.3d 572 (5th Cir. 2005); *Amaral v. INS*, 977 F.2d 33 (1st Cir. 1992). This also accords, as the Immigration Judge noted, with how the Second Circuit itself, in the criminal context, has interpreted the term "drug trafficking crime." *United States v. Simpson, supra*. In *Matter of Elgendi*, 23 I&N Dec. 515 (BIA 2002), in which the alien had twice been convicted of misdemeanor drug possession in violation of New York law, we reviewed then existing Second Circuit law and essentially found that the latter (criminal law) approach was the favored approach in the Second Circuit, that that circuit was not likely any longer to follow the hypothetical felony approach in the immigration context, and that, applying the court's criminal law approach, the alien there had not been convicted of an aggravated felony. However, in footnote 7 of its *Simpson* opinion, the Second Circuit expressly "offer[ed] no comment on whether such convictions constitute 'aggravated felonies' for any purpose other than" criminal law. Thus, *United States v. Simpson* offers no guidance or resolution regarding the issue, on which we also opined in *Matter of Elgendi,* as to whether the Second Circuit's bifurcated approach has been abandoned in favor of the majority approach followed by the Board in *Matter of Yanez* and by the Second Circuit itself in the criminal law sphere. This question could be crucial in light of the differing results, as to the scenario presented in this case with respect to multiple State drug possession convictions, reached by circuits that adhere to one approach or the other.

A further complication arises because of intervening Supreme Court decisions that plainly signal that the bifurcated approach followed in three circuits as to the construction of the

5

same term "drug trafficking crime" is likely impermissible. See *Clark v. Martinez*, 125 S.Ct. 716, 722-723, 727 (2005) (refusing to countenance varying interpretations of the indefinite detention provision of 8 U.S.C. § 1231(a)(6) based on the admissibility of the alien because such variability "would be to invent a statute rather than interpret one" and "would establish within our jurisprudence, beyond the power of Congress to remedy, the dangerous principle that judges can give the same statutory text different meanings in different cases"); *see also Leocal v. Ashcroft*, 125 S.Ct. 377, 384 n.8 (2004) (explaining that, if a statute has criminal applications, "the rule of lenity applies" to the Court's interpretation of the statute even in immigration cases "[b]ecause we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context").

These cases make plain that, at some point, the three circuits, including the Second, that have followed the bifurcated approach to interpreting the term "drug trafficking crime" will need to decide which of the two approaches to adopt, both for immigration and criminal law purposes. But nothing in the Supreme Court's decisions portends which interpretation those courts of appeals will choose.

In the end, we reach the same conclusion as the Immigration Judge because we find, in the wake of the Supreme Court's *Clark v. Martinez* and *Leocal v. Ashcroft* rulings, there is effectively no way for us authoritatively to determine which approach that court will follow in the immigration context. Therefore, our decision in *Matter of Yanez, supra*, dictates that we adopt the approach taken in the majority of circuits, and the one applied by the Second Circuit in *United States v. Simpson, supra*, that treats the respondent's second drug offense as a federal felony and hence a "drug trafficking crime" and aggravated felony under section 101(a)(43)(B).[2]

---

[2] 8 U.S.C. § 1101(a)(43)(B) provides that "[t]he term 'aggravated felony' means . . . illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a

6

> The respondent's NOA makes no argument beyond his contesting that he is not removable as an alien convicted of an aggravated felony. Therefore, we will not address any other portions of the Immigration Judge's decision, as we do not find any error raised by the respondent for us to consider. Accordingly, the Immigration Judge's decision is affirmed, and the respondent's appeal is dismissed.

(*Id.* (internal footnotes omitted; footnote added))

5.      Beckford filed a petition for review of agency action and concurrently therewith applied for a stay of removal in the Second Circuit Court of Appeals on April 6, 2006. (Doc. 13, Exhibit B; Exhibit E to Rau declar. ("You currently have a Petition for Review and Stay of Removal pending with 2nd circuit."))

6.      On June 20, 2006, the U.S. Immigration and Customs Enforcement ("ICE") arm of the Department of Homeland Security decided to continue Beckford's detention following a file review. (Doc. 12, Exhibit E to Rau declar. ("Due to your extensive criminal record, ICE considers you a threat to the community. Your total disregard for authority demonstrates a significant likelihood that you would fail to abide by conditions set forth if released from custody. Based on these factors, ICE deems you a flight risk."))

7.      Beckford filed his petition seeking habeas corpus relief, pursuant

---

drug trafficking crime (as defined in section 924(c) of Title 18)[.]"

to 28 U.S.C. § 2241, in this Court on October 13, 2006. (Doc. 1, at 1 ("[P]etitioner contends that his continued and prolonged detention is not only unnecessary, but is unconstitutional in light of the edicts and decrees of the United States Supreme Court. See **Zadvydas v. Davis**, 533 U.S. 678, 690 (2001). Holding that . . . {'*Detention is permitted only for the amount of time necessary to bring about an alien's removal, this time has been reasonably presumed to be six months*'.}"))

  8. On November 8, 2006, the Second Circuit Court of Appeals entered an order stipulated to by the parties withdrawing the appeal. (Doc. 13, Exhibit B ("' . . .The above captioned petition for review is hereby withdrawn without costs or attorneys fees and without prejudice to reinstatement by either party upon written notice filed with the Clerk of this Court and rec'd by the AUSA by the earlier of (i) 30 days after the issuance by the Supreme Court of a decision in Lopez or (ii) March 20, 2007 . . . .' For the Court, by LG, Staff Counsel."))

  9. On December 19, 2006, Beckford filed a Notice For Reinstatement of Petition for Review in the Second Circuit Court of Appeals. (Doc. 13, Exhibit A) The Second Circuit entered a reinstatement order on January 3, 2007. (Doc. 13, Exhibit B)

8

## **CONCLUSIONS OF LAW**

1. In *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491, 2498, 150 L.Ed.2d 653 (2001), the Supreme Court determined that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."

2. In *Zadvydas*, the Supreme Court held that the post-removal-period detention statute, 8 U.S.C. § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689, 121 S.Ct. at 2498.

3. 8 U.S.C. § 1231 reads, in relevant part, as follows:

**(a)   Detention, release, and removal of aliens ordered removed**

   **(1)   Removal period**

      **(A)   In general**

      Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

> **(B) Beginning of period**
>
> The removal period begins on the **latest** of the following:
>
> **(i)** The date the order of removal becomes administratively final.
>
> **(ii)** If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> **(iii)** If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.
>
> **(C) Suspension of period**
>
> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.
>
> **(2) Detention**
>
> During the removal period, the Attorney General shall detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

*Id*. (emphasis supplied). The Supreme Court in *Zadvydas* concluded that six

months represents a presumptively reasonable period of time to detain a removable alien awaiting deportation pursuant to the provisions of this statute. 533 U.S. at 701, 121 S.Ct. at 2505 ("While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."); *see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002)

("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter.").

       4.     In *Akinwale*, the Eleventh Circuit determined that the six-month detention period recognized by the Supreme Court "must have expired" at the time a petitioner's § 2241 petition is filed "in order to state a claim under *Zadvydas*." 287 F.3d at 1052; *see also id.* ("[I]n order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."). The *Akinwale* court also indicated that the running of the six-month detention period can be interrupted or tolled by the alien moving for a stay of deportation/removal and any subsequent action of the appropriate circuit court in granting such motion. *See id*., n.4 ("Akinwale was taken into custody on November 17, 1999, and interrupted the running of time under *Zadvydas* by moving on December 3, 1999, for a stay of deportation in his prior appeal to this Court. The stay was granted on January 10, 2000. . . . Akinwale subsequently filed the § 2241 petition in this case on March 21, 2000. Thus, Akinwale, unlike the aliens in *Zadvydas*, chose to simultaneously challenge issues related to his removal order and his post-removal period detention. . .

. Therefore, Akinwale did not have even an unencumbered month of detention prior to filing his § 2241 petition, let alone the requisite six months.").

5. In this case, Beckford has filed his § 2241 petition prematurely. Though petitioner's filing date in the instant action, October 13, 2006 (Doc. 1), came more than six months after the date upon which his removal became administratively final (*see* Doc. 12, Exhibit C to Rau declar., March 7, 2006 Decision of the Board of Immigration Appeals), he interrupted the running of the time under *Zadvydas* by moving, on April 6, 2006, for a stay of deportation. Therefore, in accordance with *Zadvydas* and *Akinwale*, Beckford has had only a one month period of detention prior to the filing of his § 2241 petition that can be counted toward the six-month post-removal-period detention recognized as presumptively reasonable by the Supreme Court.[3] In other words, the six-month period has not yet expired; thus, petitioner has not stated a claim for relief under 28 U.S.C. § 2241 and *Zadvydas*.

---

[3] While petitioner may attempt to argue that the six-month clock began to tick again on November 8, 2006 when the Second Circuit Court of Appeals entered a stipulated order withdrawing his appeal, certainly the time was again tolled, if it ever stopped being tolled, when Beckford filed his notice for reinstatement of petition for review on December 19, 2006. (*See* Doc. 13, Exhibit A, at 2 ("**NOTICE** is hereby given that: 1. Pursuant to the Stipulation and Order of the Court dated November 8, 2006, the captioned Petition for Review is to be reinstated by the Clerk of the Court and a new scheduling order issued herein; 2. **That the stay of removal previously granted by the Court shall remain in effect pending the decision of the Court on the petition**.")) At best, therefore, two and one-half months of the 6-month period has expired in this case.

## **CONCLUSION**

For these reasons, the undersigned recommends that this Court dismiss, without prejudice, Joel Beckford's habeas corpus petition filed pursuant to 28 U.S.C. § 2241. Beckford's petition has been prematurely filed under 8 U.S.C. § 1231. The dismissal is without prejudice to petitioner's ability to file a new § 2241 petition in the future when he is able to state a claim under *Zadvydas*.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 6th day of February, 2007.

       s/WILLIAM E. CASSADY
       **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                              s/WILLIAM E. CASSADY
                                              UNITED STATES MAGISTRATE JUDGE